Nos. 25-2294, 25-2357

———————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

ERIC KELLER,

*Plaintiff-Appellant/Cross-Appellee,*

**v.**

EXPERIAN INFORMATION SOLUTIONS, INC.,

*Defendant-Appellee/Cross-Appellant.*

———————————

On Appeal from the United States District Court
for the Middle District of North Carolina
1:23-CV-00409 (Hon. Thomas D. Schroeder)

———————————

OPENING/RESPONSE BRIEF OF DEFENDANT-
APPELLEE/CROSS-APPELLANT EXPERIAN
INFORMATION SOLUTIONS, INC.

———————————

Jeffrey R. Johnson
John C. Brinkerhoff, Jr.
Isabelle H. Sandoval
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-7684
Facsimile: (202) 626-1700
jeffreyjohnson@jonesday.com

*Counsel for Defendant-Appellee/Cross-Appellant Experian Information
Solutions, Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................. 1

STATEMENT OF JURISDICTION ...................................................... 3

STATEMENT OF THE ISSUES .......................................................... 3

STATEMENT OF THE CASE ............................................................. 4

SUMMARY OF THE ARGUMENT ...................................................... 14

STANDARD OF REVIEW ................................................................. 18

ARGUMENT .................................................................................. 19

I.   The district court correctly dismissed Keller's individual
     reinvestigation claims. ............................................................ 19

     A.   A threshold requirement for reinvestigation claims is
          an inaccuracy that is objectively and readily verifiable
          by a credit-reporting agency. .......................................... 20

     B.   Keller's dispute is not objectively and readily verifiable
          by Experian as a credit-reporting agency ........................ 27

     C.   Keller's arguments to the contrary are unavailing. ........... 32

II.  The district court correctly dismissed Keller's putative class
     reinvestigation claim ............................................................. 42

     A.   Keller forfeited a challenge to the district court's
          dismissal of that claim for lack of standing ..................... 42

     B.   The district court's conclusion that Keller failed to
          allege a traceable injury was correct. .............................. 44

     C.   Even if Keller had standing, the inaccuracy ruling
          dooms his class claim. ................................................... 46

CONCLUSION ............................................................................... 47

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Baehr v. Craig Northrop Team,*
953 F.3d 244 (4th Cir. 2020)............................................................. 46

*Bagby v. Experian Info. Sols., Inc.,*
162 F. App'x 600 (7th Cir. 2006)........................................................ 27

*Berry v. Experian Info. Sols., Inc.,*
115 F.4th 528 (6th Cir. 2024) ............................................................ 21

*Bibbs v. Trans Union LLC,*
43 F.4th 331 (3d Cir. 2022)................................................................ 21

*Brill v. TransUnion LLC,*
838 F.3d 919 (7th Cir. 2016)........................................................ 24, 31

*Buscemi v. Bell,*
964 F.3d 252 (4th Cir. 2020)............................................................. 18

*Cahlin v. Gen. Motors Acceptance Corp.,*
936 F.2d 1151 (11th Cir. 1991).................................................... 21, 41

*Carvalho v. Equifax Info. Servs., LLC,*
629 F.3d 876 (9th Cir. 2010).................................................... *passim*

*Casella v. Equifax Info. Servs.,*
56 F.3d 469 (2d Cir. 1995) ................................................................ 36

*Chuluunbat v. Experian Info. Sols., Inc.,*
4 F.4th 562 (7th Cir. 2021) .......................................................... 25, 26

*Dalton v. Cap. Assoc. Indus., Inc.,*
257 F.3d 409 (4th Cir. 2001)............................................................. 20

*Davis v. Soc. Sec. Admin.*,
741 F. App'x 952 (4th Cir. 2018).........................................35

*DeAndrade v. Trans Union LLC*,
523 F.3d 61 (1st Cir. 2008) ..........................................23, 26

*Denan v. Trans Union LLC*,
959 F.3d 290 (7th Cir. 2020).................................... *passim*

*DePaola v. Clarke*,
884 F.3d 481 (4th Cir. 2018).........................................35

*Ghazaryan v. Equifax Info. Servs., LLC*,
740 F. App'x 157 (9th Cir. 2018).........................................27

*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009)..................................6, 24, 25

*Heirholzer v. Guzman*,
125 F.4th 104 (4th Cir. 2025) .........................................42

*Herisko v. Bank of Am.*,
367 F. App'x 793 (9th Cir. 2010).........................................36

*Hinkle v. Midland Credit Mgmt., Inc.*,
827 F.3d 1295 (11th Cir. 2016).........................................23

*In re Under Seal*,
749 F.3d 276 (4th Cir. 2014).........................................43

*Ind. News, Inc. v. City of Charlotte*,
568 F.3d 148 (4th Cir. 2009).........................................19

*Johnson v. MBNA Am. Bank, NA*,
357 F.3d 426 (4th Cir. 2004).........................................5, 22

*Lewis v. Casey*,
518 U.S. 343 (1996).........................................46

*Lloyd v. FedLoan Servicing,*
    105 F.4th 1020 (8th Cir. 2024) ................................................... 25, 26

*Mader v. Experian Info. Sols., Inc.,*
    56 F.4th 264 (2d Cir. 2023) ................................................................ 26

*Phillips v. Pitt Cnty. Mem. Hosp.,*
    572 F.3d 176 (4th Cir. 2009) ............................................................. 19

*Reyes v. Equifax Info. Servs., LLC,*
    140 F.4th 279 (5th Cir. 2025) ......................................... 22, 23, 26, 41

*Roberts v. Carter-Young, Inc.,*
    131 F.4th 241 (4th Cir. 2025) ..................................................... *passim*

*Ruffin-Thompkins v. Experian Info. Sols., Inc.,*
    422 F.3d 603 (7th Cir. 2005) ............................................................. 36

*Sarver v. Experian Info. Sols.,*
    390 F.3d 969 (7th Cir. 2004) ............................................................... 5

*Saunders v. Branch Banking & Tr. Co. of Va.,*
    526 F.3d 142 (4th Cir. 2008) .................................................. 23, 24, 31

*Sheppheard v. Morrisey,*
    143 F.4th 232 (4th Cir. 2025) ........................................................... 18

*Spence v. TRW, Inc.,*
    92 F.3d 380 (6th Cir. 1996) ............................................................... 36

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ........................................................................... 42

*United States v. Massenburg,*
    564 F.3d 337 (4th Cir. 2009) ............................................................. 44

*Wright v. Experian Info. Sols., Inc.,*
    805 F.3d 1232 (10th Cir. 2015) .................................................. 21, 26

**STATUTES**

15 U.S.C. § 1681 ............................................................. 4, 6, 41

15 U.S.C. § 1681i ............................................................. *passim*

15 U.S.C. § 1681s-2 .......................................................... 5, 6, 40

28 U.S.C. § 1291 ................................................................... 3

28 U.S.C. § 1331 ................................................................... 3

**OTHER AUTHORITIES**

12 C.F.R. § 1022.41 .............................................................. 5

12 C.F.R. § 1022.43 .............................................................. 6

Fed. R. Civ. P. 12 ............................................................... 18

S. Rep. No. 104-185 (1995) ................................................. 26

## ORAL ARGUMENT STATEMENT

Pursuant to Federal Rule of Appellate Procedure 34(a), Experian respectfully submits that oral argument is unnecessary. But if oral argument would be of assistance to the Court, Experian stands ready to provide it.

## INTRODUCTION

Eric Keller had a problem with his Experian credit file: It said that his payments on his car loan with Truist Bank were several months past due. Now, Keller had not in fact made those payments. And Truist had told him that it believed that he owed them. Why, then, did Keller disagree with Experian's reporting? As he tells it, Truist made a mistake. It accidentally told him that his loan was paid off, closed his account, and declined to take payments that he tendered, only to later reopen the account and demand the past payments he had not actually made. To Keller, Truist's mistakes meant that his loan was still in good standing— even though for months he did not put money toward the loan balance.

All this led Keller to sue Truist, claiming (among other things) that Truist had breached the loan contract by calling the payments past due. But these events also led Keller to dispute the reporting of his car-loan account with Experian. When a consumer does so, the Fair Credit Reporting Act demands a reasonable reinvestigation into an alleged inaccuracy—much of which involves forwarding the dispute along to the furnisher. *See* 15 U.S.C. § 1681i. But Keller insists that Experian needed go far further and adjudicate his dispute with the furnisher. Essentially,

as Keller sees it, Experian needed to decide whether Truist could deem the payments that he allegedly tendered past due despite its snafu.

Under the FCRA, however, a credit-reporting agency need only look into "objectively and readily verifiable" errors—and that inquiry need only be reasonable. As this Court has already recognized for furnishers of consumer information, this means that they need not act as tribunals, sifting through facts and evidence and addressing unsettled legal questions. That is all the more true for credit-reporting agencies, who are far more distant from the underlying facts and who are poorly equipped to resolve these kinds of disputes between debtors and creditors. Requiring as much would also turn the FCRA into a vehicle for collateral attacks on consumer debts best addressed directly between the creditor and debtor. The district court therefore correctly dismissed Keller's individual claims under the FCRA's reasonable reinvestigation provision.

It also correctly dismissed his putative class claim challenging Experian's suspicious-mail policy. For that claim, Keller alleges that Experian was required to start its reinvestigation sooner, rather than first confirm that he had authorized the dispute under its policy. But

Keller also alleges that the injury-causing information stayed in his file before, during, and after Experian's reinvestigation. Any delay simply did not matter—meaning he lacks standing to sue over it. Even if he had standing, that claim would falter for the same reasons as his individual claims. As a reinvestigation claim, it too requires the objectively and readily verifiable error he failed to allege. The district court's judgment should therefore be affirmed.

## STATEMENT OF JURISDICTION

Keller filed suit under the FCRA, 15 U.S.C. § 1681 *et seq.*, conferring federal-question jurisdiction on the district court under 28 U.S.C. § 1331. The district court dismissed Keller's individual claims on March 30, 2024, dismissed his class claim on September 23, 2025, and entered final judgment that day. JA 5, JA 9, JA 135, JA 433-434. Keller timely noticed his appeal on October 22, 2025, and Experian timely noticed its cross-appeal on November 5, 2025. JA 435; ECF No. 71. This Court has jurisdiction over both under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Whether Keller's assertion that his creditor cannot call his account delinquent because it had closed the account previously and

declined tendered payments is an objectively and readily verifiable error that credit-reporting agencies must reinvestigate.

2.      Whether Keller has standing to challenge Experian's alleged policy of confirming that a consumer actually authorized certain disputes sent by mail—even though, after that confirmation and a review of the dispute, it kept the disputed information in his credit file.

3.      Alternatively, whether a failure to identify an objectively and readily verifiable error forecloses a challenge to that mail policy through a reinvestigation claim.

## STATEMENT OF THE CASE

### I.    Legal Background

The FCRA regulates the "elaborate mechanism" of credit reporting in the United States, 15 U.S.C. § 1681(a)(2), which involves "a vast flow and store of consumer information." *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 245 (4th Cir. 2025). That system's two main players— furnishers and credit-reporting agencies—"serve discrete functions." *Id.* As a general rule, furnishers (typically banks, credit lenders, and collection agencies) own the accounts in question and provide consumer data about those accounts to credit-reporting agencies. *Id.* Credit-reporting agencies, in turn, compile that data "into a comprehensible

format," namely, a credit report. *Id.* These reports "allow[] providers of credit, landlords and other entities to evaluate individuals and make informed decisions" about them. *Id.*

The amount of information that credit-reporting agencies process is staggering. They maintain hundreds of millions of credit files and receive over a billion updates to accounts (known as tradelines) each and every month. *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020); *see also, e.g., Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004) (noting that Experian "processes over 50 million updates to trade information each day," gathers information from "approximately 40,000 sources," and maintains accounts on around "200 million names").

The FCRA regulates credit-reporting agencies (which it calls "consumer reporting agencies") and furnishers "in a manner consistent with their respective roles." *Denan*, 959 F.3d at 294; *accord Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432 (4th Cir. 2004). Relevant here, furnishers have a "[d]uty … to provide accurate information" and to correct inaccurate information. 15 U.S.C. § 1681s-2(a); *see* 12 C.F.R. § 1022.41(a). Credit-reporting agencies, in turn, must "follow reasonable

procedures to assure maximum possible accuracy" when preparing credit reports. 15 U.S.C. § 1681e(b).

The FCRA imposes additional duties on both furnishers and agencies when a consumer disputes credit information. If the consumer raises his concerns with the furnisher "directly," *Roberts*, 131 F.4th at 245, the FCRA triggers the furnisher's obligation to "conduct an investigation" into the disputed information, 15 U.S.C. § 1681s-2(a)(8); *see* 12 C.F.R. § 1022.43(a). A consumer can also dispute the information "indirectly by notifying [the] consumer reporting agency," *Roberts*, 131 F.4th at 245, which must then "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate," 15 U.S.C. § 1681i(a)(1)(A).

Whether the dispute is raised first with a furnisher or agency, the result is largely the same. Under the FCRA, an agency's "'reasonable reinvestigation' consists largely of triggering the investigation by the furnisher" who actually holds the information relevant to the dispute. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009); *see infra* at 24-26. Soon after receiving a dispute, the agency must forward all relevant information to the furnisher, 15 U.S.C. § 1681i(a)(2),

6

who must then "conduct an investigation with respect to the disputed information" and report the results back to the credit-reporting agency, *id.* § 1681s-2(b)(1). If the agency ultimately learns that the disputed information is "inaccurate or incomplete or cannot be verified," it must delete or modify the information "as appropriate, based on the results of the reinvestigation." *Id.* § 1681i(a)(5)(A). And regardless of a reinvestigation's outcome, the agency must notify the consumer of the results. *Id.* § 1681i(a)(6). Should a consumer continue to disagree with the reporting, he "may file a brief statement setting forth the nature of the dispute" for the credit-reporting agency to include with its future reporting. *Id.* § 1681i(b).

## II.  Factual and Procedural History

### A.  Keller develops a dispute over his car loan with Truist.

As Keller tells it in the operative complaint, he bought a car and financed the purchase through TD Auto Finance around March 2021. JA 14. He refinanced through Truist Bank a few months later. *Id.* Truist mistakenly sent two payoff checks to TD Auto for the refinancing, so TD Auto refunded the amount of one of those checks to Truist. *Id.* Compounding the error, Truist mistakenly treated that refund as a payment, credited the amount to Keller's account, and listed the car as

paid off. *Id.* It later refused "numerous attempts" by Keller to make payments, reasoning that the loan had been paid off. JA 15.

Upon realizing its error, Truist "reopened [Keller's] account." *Id.* When Truist did so, Keller says, it immediately demanded over $5,000, an amount that "represented all the payments up to that point plus … numerous late fees and significant interest." *Id.* Keller contacted Truist to contest that amount, but Truist "refused" to change its position. *Id.*

Truist then began reporting to agencies that Keller "was several months in arrears." *Id.* To Keller, "[t]his reporting was false due to the delinquency being caused entirely by Truist Bank's conduct." *Id.* In other words, this reporting "failed to acknowledge that Truist did not allow [Keller] to make payments, even though he tried multiple times." JA 15-16.

Unable to change his creditor's mind, Keller attacked the debt by disputing it with credit-reporting agencies, including Experian. JA 16. Although he allegedly had "documentary proof" to support his dispute, he did not provide that to Experian. JA 17-18. He instead sent a cursory dispute letter that his counsel drafted. JA 16. That letter said, "your credit report is showing inaccurate information regarding a Truist Bank

Auto loan with account number starting with 120338[].” JA 33. That account was “reporting on [his] report several times in separate report entries, and so you should be aware that there is something wrong with the report.” *Id.*

The letter then explained what Keller believed was wrong: “Tru[i]st Bank has made several mistakes including accidentally paying it off, and then refusing to fix the problem when the[y] realized they had done it. They refused to take my payment for several months as well” and were “[n]ow … reporting me as delinquent greater than 180 days on some of the entries on your report.” *Id.*

Keller’s demand was likewise clear: “This is all wrong and all the report entries from Truist Bank need to [be] fixed to state that the bank messed up and that the loan is in good standing or the entries need deleted.” *Id.*

Experian initially responded with concerns this letter had not actually been “sent by or authorized by” Keller. JA 16-17. But it began to look into it once Keller confirmed that he had authorized the dispute. JA 17. As part of that review, Experian sent the dispute to Truist through its standard “Automated Consumer Dispute Verification”

(ACDV) process. *Id.* Truist responded that the delinquency was accurate. *Id.* Experian then told Keller that it would keep the disputed delinquency on his report. JA 18. Because Experian has continued to report the account as delinquent, Keller says, he "has been unable to obtain a mortgage loan on a property he was interested in." JA 21.

Along the way, Keller sued Truist claiming, among other things, that the bank had breached the loan contract, breached the covenant of good faith and fair dealing, and violated North Carolina consumer protection law. *See* JA 119-120. For his breach-of-contract claim, he alleged that Truist had breached the contract "when it refused to accept [his] payments," as well as "when it improperly reopened the account and considered it to be over $5,000 delinquent despite the delinquency being the fault of [Truist]." JA 120; *see* JA 134. That suit has since settled. *See* Stipulation, *Keller v. Truist Bank*, No. 23-cv-407 (M.D.N.C. Apr. 16, 2024), ECF No. 33.

## B. Keller sues Experian and his individual claims are dismissed.

Keller also sued Experian. JA 1. In his complaint, he raised three claims that Experian had violated the FCRA's reinvestigation requirements in 15 U.S.C. § 1681i. Two claims focused on the

reinvestigation process in his case, claiming that Experian had violated the FCRA by conducting an unreasonable reinvestigation and by failing to "maintain reasonable procedures designed to prevent the reappearance in a consumer's file … of information that is deleted" upon reinvestigation.  JA 28-29.  He also brought a putative class claim challenging Experian's suspicious-mail policy, alleging that Experian had failed to properly commence its reinvestigation duties under 15 U.S.C. § 1681i(a)(1)(A) by first asking him to confirm that he had sent the dispute letter.  JA 26-27.

The district court dismissed the individual reinvestigation claims. The court recognized that, "[t]o state a claim under § 1681i, a consumer must first show that his or her credit file contains inaccurate or incomplete information."  JA 132.  The "decisive inquiry," the court continued, "is whether the defendant [credit-reporting agency] could have uncovered the inaccuracy if it had reasonably reinvestigated the matter."  *Id.*  The court reasoned that Keller's dispute was not one that Experian was "qualified" to decide or could "have 'quickly resolved'"; it instead was the "the subject of an action that [Keller] ha[d] brought against Truist" that was then "pending before t[he] Court."  JA 134.  The

district court also noted that the suit against Experian threatened to "collateral[ly] attack" the underlying debt. *Id*. But the district court declined to dismiss Keller's putative class reinvestigation claim regarding the suspicious-mail policy. JA 131.

## C. Keller tries to revive his claims with a new theory and the district court dismisses his last claim.

Experian answered the complaint and moved for judgment on the pleadings of the remaining claim, pointing out that the district court's reasoning for Keller's individual claims applied equally to his putative class claim. JA 136, JA 166-176. After all, that claim was also a reinvestigation claim under § 1681i, so it carried the same threshold requirement for a cognizable dispute. JA 166-176. Experian also later moved for dismissal for lack of standing. *See* JA 370.

Keller countered by seeking leave to amend his complaint. JA 325. "Additional facts that [he] did not originally plead," he contended, would "underscore" the dispute's "factual" nature. JA 326. Keller's principal additions involved three tradelines from Truist that he said conflicted. Two listed the same account number and original balance (#120338[] and $34,185), while the third had a different number and original balance (#120187[] and $34,215). *See* JA 222-225. Of the two accounts sharing a

number and original balance, one listed that the debt was "paid/closed/never late" as of "Feb 2022," while the other began reporting 180-day delinquencies starting in "Sep 2022." *Id.* Keller alleged that this ostensibly "conflicting information should have alerted Experian that Truist's reporting needed to be further verified." JA 254. But he otherwise did not explain how it established one way or the other whether he was actually delinquent on his debt.

The district court dealt with the putative class claim challenging Experian's mail policy on standing grounds. JA 432-433. It reasoned that the operative complaint's allegations "fail[ed] to plausibly set out how Experian's immediate forwarding of Keller's first dispute letter might have led Keller to obtain his desired mortgage loan." JA 427. The court added that "the delay in Experian's reinvestigation cannot have caused Keller's alleged injury": Under the facts alleged, "an immediate reinvestigation (absent the alleged delay) only would have more quickly led Truist to affirm … that Keller's file accurately reflected Truist's own records." JA 426 (emphasis omitted). The court reviewed the proposed amendments to the complaint and concluded that "none of the allegations

demonstrate[] an injury in fact fairly traceable to Experian's conduct." JA 430. It therefore dismissed the putative class claim.

As for the other pending motions—including Experian's motion for judgment on the pleadings and Keller's motion for leave to amend—the district court did "not reach the merits." JA 432 n.4. Instead, it denied them as moot. JA 432-433 & n.4.

Keller appealed. *Id.* at 435. Experian then filed a conditional cross-appeal to preserve its right to appeal the district court's order dismissing its motion for judgment on the pleadings if this Court found standing. *See* ECF No. 71.

## SUMMARY OF THE ARGUMENT

**I.** The district court correctly dismissed Keller's individual claims that Experian violated the FCRA's reinvestigation provisions. Keller's complaint lacked a crucial component of a reinvestigation claim: an "objectively and readily verifiable" error in his file that he had raised with Experian. *Roberts*, 131 F.4th at 251.

**A.** The requirement that an error be objectively and readily verifiable comes from the FCRA. Its reinvestigation provision requires that a consumer dispute an "inaccuracy," and demands only a

"reasonable reinvestigation" by credit-reporting agencies—not herculean efforts. 15 U.S.C. § 1681i(a)(1).

For furnishers, this Court has already explained that disputes like Keller's are not objectively and readily verifiable. A furnisher need not engage in "quasi-discovery," resolve "unsettled questions of law," or more generally operate like a tribunal. *Roberts*, 131 F.4th at 251. They lack the "resources" and "expertise" to perform those functions, and it would be unreasonable to demand that they do so anyway. *Id.*

Doubly so for credit-reporting agencies like Experian. Credit-reporting agencies are not in the consumer-lending business. They are distant from the underlying facts, and until a dispute, know little about the consumer apart from what a furnisher tells them. So when a consumer asks a credit-reporting agency to inject itself into a messy dispute with his lender, he very often asks it to assume an adjudicatory role that it is particularly ill-equipped to perform. The credit-reporting agency may need to don judicial robes, facilitate quasi-discovery, make findings about the underlying facts, and then offer its own legal opinion on the merits of the dispute. The FCRA does not demand this private arbitration system, nor does it provide that path for collaterally attacking

consumer debts. Instead, it demands that a credit-reporting agency look into only objectively and readily verifiable disputes. And though some of the most simple legal disputes may be objectively and readily verifiable by a credit-reporting agency, many will not.

**B.** Keller's is such a dispute. In his letter to Experian, in his complaint, and in his response to Experian's motion to dismiss, the alleged error he focused on was Experian's reporting the account as past due. That was "all wrong," and any tradelines for that account should reflect that the "loan was in good standing," JA 33, because his "delinquency" was caused by Truist's decision to close the account and decline the payments he tendered, JA 15-16, JA 13. To resolve this question, he suggests, Experian would need to collect evidence from him and Truist about what actually happened. Keller's Opening Br. 33. Moreover, it would need to review his contract (which he did not provide), identify the applicable rules, and then resolve any material factual disputes. These are tasks far better suited for counsel and courts— indeed, Keller ended up suing to resolve his dispute with Truist.

**C.** For these reasons, it is "patently obvious" that this error is "not objectively and readily verifiable," making no reinvestigation necessary.

*See Roberts*, 131 F.4th at 251 n.7. So Keller tries to refashion his dispute as one about conflicting tradelines in his credit file. This argument came late for a reason. On reinvestigation, Experian fixed the purportedly facially conflicting tradelines. And Keller's dispute letter makes clear (as does common sense) that what he told Experian that he cared about was the *one* negative tradeline that said his account was past due, not the others that positively depicted his credit history.

Keller also cannot create a reinvestigation claim on the theory that, because the alleged error was not objectively and readily verifiable, Experian needed to delete the account. That theory flatly contradicts this Court's conclusion that an objectively and readily verifiable error is a threshold requirement for investigation and reinvestigation claims like Keller's. It would also frustrate the fairness and accuracy of the credit-reporting system by requiring agencies to delete (presumably negative) debts once a consumer raises a particular sort of dispute over it. This Court should reject Keller's attempt to reshape the FCRA in his favor.

**II.A.** Keller's challenge to the suspicious-mail policy fares no better. To start, he has plainly forfeited the issue by not mentioning, much less disputing, the district court's ruling on this count in his opening brief on

appeal.  In any event, the district court was right to dismiss his claim.
Notably, the past-due tradeline stayed in his file both before and after
the reinvestigation.  He thus lacks standing to bring a putative class
claim challenging a mail policy that he says unlawfully delayed the
reinvestigation's start.  Whether the reinvestigation had started sooner
or later, the same negative information would have been in his file, and
the same injuries would have resulted.

**B.** Should this Court disagree about standing, though, his failure to
allege an inaccuracy also forecloses the claim.  Since Keller did not
dispute an inaccuracy, the clock to start a reinvestigation never began.
So he cannot use the FCRA's reinvestigation provision to challenge any
delay.  And without a reinvestigation claim of his own, he cannot
represent a putative class of persons whose FCRA rights the mail policy
purportedly violated.  In that scenario, the district court's judgment
should be affirmed, but with prejudice.

## STANDARD OF REVIEW

This Court reviews dismissals for lack of jurisdiction and failure to
state a claim de novo.  *Buscemi v. Bell*, 964 F.3d 252, 262 (4th Cir. 2020);
*Sheppheard v. Morrisey*, 143 F.4th 232, 242 (4th Cir. 2025); *see* Fed. R.

Civ. P. 12(b)(1), (6).  When considering dismissal, courts take a plaintiff's factual allegations as true and draw reasonable inferences in his favor, but do not make "unwarranted inferences" for the plaintiff.  *E.g.*, *Phillips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  This Court reviews the denial of a motion for judgment on the pleadings de novo, applying the same standards as a motion to dismiss.  *Ind. News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009).

## ARGUMENT

### I.  The district court correctly dismissed Keller's individual reinvestigation claims.

The district court correctly dismissed Keller's individual reinvestigation claims.  The FCRA requires that credit-reporting agencies "conduct a reasonable reinvestigation" of  disputes made directly by a consumer—but only if the consumer disputes "the completeness or accuracy of information in his file."   15 U.S.C. § 1681i(a)(1)(A).  Examining similar requirements elsewhere in the FCRA, this Court has recognized that consumers challenging responses to their disputes must allege an "objectively and readily verifiable" inaccuracy.  *Roberts*, 131 F.4th at 251.

Here, Keller alleges that Truist improperly reported him as delinquent on his loan payments even though he concededly had not made them. As a defense, Keller asserted that Truist had closed his account, told him the loan was paid off, and did not take any payments he had tendered. Lurking beneath his position is a question: What is the legal effect of a lender's error about the status of a debt? The answer is not objectively and readily verifiable by a credit-reporting agency like Experian. Keller's dispute is thus not cognizable under the FCRA, and he has failed to state a plausible claim for relief.

## A. A threshold requirement for reinvestigation claims is an inaccuracy that is objectively and readily verifiable by a credit-reporting agency.

**1.** To bring his reinvestigation claims, Keller needed to allege that he raised an objectively and readily verifiable error with Experian. As this Court has recognized in the context of claims against furnishers, plaintiffs disputing an investigation's reasonableness under the FCRA "must allege facts that, if true, show that [his] credit report contained inaccurate or incomplete information." *Roberts*, 131 F.4th at 252; *accord Dalton v. Cap. Assoc. Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (holding the same for "reasonable procedure" claims against credit-

reporting agencies). And every circuit to address the issue has agreed that proof of inaccuracy is a "threshold requirement" of any claim under § 1681i(a). [1] This Court has likewise held that an "inaccuracy" is actionable under the FCRA only if it is "objectively and readily verifiable." *Roberts*, 131 F.4th at 252. Keller agrees that this standard applies here. *See* Keller Opening Br. 29.

**2.** In the context of claims against furnishers, this Court has also provided guidance about what sort of disputes that standard covers. It excludes (as examples) a "dispute that involves complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform" or a "dispute that implicates unsettled questions of law," "the subjective nature of the parties' actions," or "quasi-discovery." *Roberts*, 131 F.4th at 251. "Furnishers are not tribunals," this Court reasoned, and lack "the resources" or "expertise" to engage in these inquiries. *Id.*

---

[1] *See, e.g., Bibbs v. Trans Union LLC*, 43 F.4th 331, 344 (3d Cir. 2022) (holding that "without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail"); *Berry v. Experian Info. Sols., Inc.*, 115 F.4th 528, 536 (6th Cir. 2024) (same); *Denan v. Trans Union LLC*, 959 F.3d 290, 296 (7th Cir. 2020) (same); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (same); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015) (same); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991) (same).

This limitation thus incorporates that the FCRA requires only "reasonable" investigations; after all, "[r]equiring investigations that resemble full court proceedings would not be reasonable." *Id.*

These limitations apply to credit-reporting agencies as well. Like furnishers, "credit reporting agencies are not tribunals" and thus are ill equipped to adjudicate disputes that require resolving legal uncertainty or factual complexity. *Carvalho*, 629 F.3d at 892; *accord Roberts*, 131 F.4th at 251 n.6; *Reyes v. Equifax Info. Servs., LLC*, 140 F.4th 279, 287 (5th Cir. 2025). And in no world would a "reasonable" reinvestigation require an agency "to assume the role of a tribunal" or engage in extensive factfinding. *Denan*, 959 F.3d at 297.

**3.** Moreover, fewer disputes will be cognizable under the FCRA for a credit-reporting agency than a furnisher. This Court has long "recognize[d] that creditors and credit reporting agencies have different roles and duties in investigating consumer disputes under the FCRA." *Johnson*, 357 F.3d at 432. It has also observed, when discussing "objectively and readily verifiable" disputes, that their "distinct functions … are relevant to considering what sorts of investigations furnishers and consumer reporting agencies can be expected to undertake." *Roberts*, 131

F.4th at 251 n.6.  Courts thus must take care to reject "attempt[s] to graft responsibilities of data furnishers … onto a credit reporting agency." *Denan*, 959 F.3d at 295; *see also, e.g.*, *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016) ("[W]hat constitutes a 'reasonable investigation' will vary depending on … whether the investigation is being conducted by a CRA … or a furnisher.").  And several distinctions between the furnishers and credit-reporting agencies affect what is "readily verifiable" in a "reasonable" reinvestigation.

To start, this Court has acknowledged that "[c]laims brought against credit-reporting agencies based on a legal dispute of an underlying debt raise concerns about 'collateral attacks' because the creditor is not a party to the suit." *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008).  To that end, every circuit to consider the issue "agree[s] that a consumer may not use § 1681i's reinvestigation procedures to collaterally attack the validity of a reported debt." *Reyes*, 140 F.4th at 287; *accord, e.g.*, *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68-69 (1st Cir. 2008); *Carvalho*, 629 F.3d at 892. Conversely, this Court has found, "claims against furnishers … do not

raise this consideration because the furnisher is the creditor on the underlying debt." *Saunders*, 526 F.3d at 150.

More practically, the FCRA recognizes that "the furnisher of credit information stands in a far better position to make a thorough investigation of a disputed debt than the [credit-reporting agency] does on reinvestigation." *Gorman*, 584 F.3d at 1156. Furnishers are almost always parties to the debt, so they "assume[] the risk and bear the loss of unpaid debt." *Denan*, 959 F.3d at 295. By definition, they know more about which debts they can collect and have far greater access to the facts surrounding them. Conversely, agencies are "third part[ies], lacking any direct relationship with the consumer." *Gorman*, 584 F.3d at 1156-57. "They simply collect and report information furnished by others." *Carvalho*, 629 F.3d at 891. Thus, a dispute is far more likely to impermissibly demand "complex fact-gathering" or "quasi-discovery," *Roberts*, 131 F.4th at 251, when posed to an agency lacking any background in the underlying dispute than to a furnisher, *see, e.g.*, *Brill v. TransUnion LLC*, 838 F.3d 919, 922 (7th Cir. 2016).

For these reasons, the statutory process for an agency's reinvestigation differs materially from that for a furnisher's

investigation. The FCRA's "statutory scheme primarily tasks furnishers with providing accurate information," both in the first instance and during consumer disputes. *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 566 (7th Cir. 2021). A credit-reporting agency's "'reasonable reinvestigation' consists largely of triggering the investigation by the furnisher," who actually holds the information relevant to the dispute. *Gorman*, 584 F.3d at 1156. And the ACDV process corresponds with the "steps set forth by the FCRA for conducting a reinvestigation." *Lloyd v. FedLoan Servicing*, 105 F.4th 1020, 1026 (8th Cir. 2024).

The FCRA generally requires that a credit-reporting agency's reinvestigation be completed within 30 days. 15 U.S.C. § 1681i(a)(1)(A). Within 5 days, though, the credit-reporting agency must forward the dispute and all relevant information to the relevant furnisher. *Id.* § 1681i(a)(2). The statute then gives the *furnisher* up until the 30-day reinvestigation deadline to report its findings back to the credit-reporting agency. *Id.* § 1681s-2(b)(2). And it requires credit-reporting agencies to have an "automated system" (*i.e.*, the ACDV process) "through which *furnishers* … may report the results of a reinvestigation." *Id.* § 1681i(a)(5)(D) (emphasis added). It tellingly states that "the results of

a reinvestigation" come from the furnisher's inquiry, not that of the credit-reporting agency. *Id.* That is, the statute explicitly recognizes and reinforces that furnishers are best situated to look into consumer disputes and determine the results.

Also underlying this structure is a corollary premise of accountability: "The FCRA expects consumers to dispute the validity of a debt with the furnisher of the information." *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1244 (10th Cir. 2015); *accord, e.g.*, *Reyes*, 140 F.4th 287; *DeAndrade*, 523 F.3d at 69; *Chuluunbaat*, 4 F.4th at 569. That is why courts have repeatedly held that even when consumers do not allege a cognizable inaccuracy against an agency, they are "not without options to resolve the dispute" because they can "dispute the debt directly with [the furnisher], which knows the nature of" the issue far better. *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 271 (2d Cir. 2023); *accord, e.g.*, *Chuluunbat*, 4 F.4th at 569. Further in line with the statute's expectations that furnishers are "primarily" responsible for information's accuracy, *Chuluunbat*, 4 F.4th at 566, the FCRA limits an agency's obligations accordingly—and "[n]othing in [§ 1681i] is intended to require … agencies to arbitrate disputes between consumers and credit

grantors as to completeness or accuracy of information in the consumer's file." S. Rep. No. 104-185, at 43 (1995); *accord, e.g.*, *Lloyd*, 105 F.4th at 1025; *Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 606 (7th Cir. 2006); *Ghazaryan v. Equifax Info. Servs., LLC*, 740 F. App'x 157, 158 (9th Cir. 2018).

*   *   *

In sum, the scope of cognizable disputes under the FCRA depends on the entity receiving the dispute. Just as the FCRA's investigation provision requires a dispute to involve information that "is objectively and readily verifiable *by the furnisher*," *Roberts*, 131 F.4th at 252 (emphasis added), its reinvestigation provision is cabined to disputes about information objectively and readily verifiable *by the credit-reporting agency*.

**B. Keller's dispute is not objectively and readily verifiable by Experian as a credit-reporting agency.**

Keller does not allege an actionable dispute under this line of authority. Recall his theory of inaccuracy: He admits that he did not make payments but alleges that "[t]he reporting [of delinquency] was false due to the delinquency being caused entirely by Truist Bank's conduct." JA 15. His dispute letter to Experian asserted that its

reporting from Truist was "inaccurate" in calling the loan "delinquent" because Truist had "accidentally pa[id] it off" and then "refused to take [Keller's] payment for several months." *Id.* at 33. To be accurate according to Keller, the reporting needed "to state that the bank messed up and that the loan is in good standing." *Id.*

Keller might have a point as a matter of contract law. Perhaps whatever State's law governs his contract with Truist endorses a "bank-error-in-your-favor" rule where his debt is entirely forgiven when a bank refuses payment. Or maybe it enforces a kind of estoppel that prohibits creditors from treating missed payments as delinquent in such circumstances. Or default rules under state law might have required Keller to do more than he alleges he did to qualify for some defense to nonpayment, but the contract, properly interpreted, displaces that law by directly addressing the consequences of Truist's mistake. Figuring all this out requires some issue-spotting—and a review of the relevant contract (which Keller's lawyer did not give Experian) to boot.

Nor is that the only step. Once the applicable legal rule is settled, then one must get the parties to come forward with the relevant facts and resolve any material disputes there, too. If governing law allowed for

estoppel, for example, the factual inquiries might involve the subjective nature of Truist's refusals, whether Keller's offer to pay complied with whatever the law demanded of it, and the context and timing surrounding the offer.  And any resolution would involve exploring other factual questions, such as the details of Truist's demands for repayment and Keller's precise response to those demands, which may (or may not) affect whether the debt became delinquent at some other time.

The process and resources necessary to address these questions is not reasonable to expect of Experian.  Experian would need to have the resources for an in-house adjudication of a creditor-debtor dispute.  Multiply that requirement across the perhaps millions of similar disputes Experian receives a year, and the burden becomes crippling.  And even with all that effort, in many cases the agency's resolution would simply be tentative until a real court definitively resolves the dispute.

Indeed, the better venue for answering all these questions would have been in Keller's breach-of-contract suit against Truist, which was ongoing during the proceedings below.  Not only could that suit have resolved legal questions, with the help of counsel and a judge.  It also would have involved full use of civil discovery against both parties to the

transaction to flesh out whether the factual prerequisites to whatever governing standards applied were met. These questions, and certainly many others, remain unanswered because Keller elected to settle his suit against Truist.

Despite needing to file a lawsuit for breach of contract (and other claims) against Truist, Keller presumes that Experian could have simply resolved the issue on its own. Imagine what that process would have looked like. Despite his counsel knowing full well how Experian's ACDV process works, Keller provided no documentation like the loan agreement or any correspondence when disputing this information. Instead, he suggests, Experian was bound to engage in "quasi-discovery," *Roberts*, 131 F.4th at 251, by demanding evidence (like "documentary proof") from him and Truist about the dispute despite lacking any subpoena authority. JA 69, 76; *see also* Keller Opening Br. 33 (suggesting that Experian should look into "Truist's records, "including "billing statements," "account notes," and "correspondence"). Experian likewise would have had to construct its own chronology (missing from the dispute letter) and determine other material facts, which would become apparent only after employing someone with legal training to identify the

governing standards. And after doing all of that factual work, it then must offer a "legal opinion on the merits" of a state-law contract claim that would soon become the subject of a lawsuit. *Carvalho*, 629 F.3d at 892. So nothing about whether Keller's admitted nonpayment constituted legal delinquency is "objectively and readily verifiable." *See Roberts*, 131 F.4th at 251.

This process, too, would inevitably result in the very collateral attack on an underlying debt about which this Court and many others have cautioned. *See Saunders*, 526 F.3d at 150. Since Experian resolved the dispute in Truist's favor, Keller has repackaged it through this reinvestigation claim. And Keller is kidding himself if he claims he would not have trumpeted a finding of non-delinquency by Experian in his suit against Truist for breach of contract.

All of this, moreover, is under the best-case scenario. If the relevant state law considered the motivations of either the creditor or debtor, then it would implicate "the subjective nature of the parties' actions." *Roberts*, 131 F.4th at 251. It is also likely that Truist would not have cooperated beyond its statutory obligations to respond to the ACDV inquiry. *See, e.g.*, *Brill*, 838 F.3d at 922 ("No company willingly tells another company:

'you want to interview my employees in order to see whether they violated the rights of someone … who sued me? No problem.'").  So even after any unreasonably extensive efforts—the quasi-discovery, legal analysis, and adjudication—Experian likely would have lacked enough details to make a decision, even if it had the competency to do so.

**C.    Keller's arguments to the contrary are unavailing.**

Keller offers little to assure that his dispute would have avoided these problems.  He does not, for example, point to a court decision that resolved the contract-payments dispute with Truist in his favor.  Indeed, he does not dispute the district court's characterization of his dispute as an impermissible collateral attack on the debt.  Instead, he broadly offers three arguments, none of which have merit.

**1.** Keller's only argument that acknowledges his actual dispute— that he was not "delinquent" on the loan—is cursory and comes late in his brief, where he claims his dispute raised only questions that could be resolved by some "simple fact-checking."  Keller Opening Br. 33.  All Experian needed to do, he proposes, was check whether "the loan was closed and title issued to the consumer," and whether Truist's records "show[ed] any billing statements for the months in question."  *Id.*

As an initial matter, Keller's "simple fact-checking" describes impermissible "quasi-discovery" into a third party (without any subpoena power). *Roberts*, 131 F.4th at 251. Moreover, depending on whatever legal defense Keller seeks to invoke (something he has never made clear), more facts would likely need to be discerned—for example, the precise nature of his offers for payment, compliance with contractual terms, or the subjective mental states of both parties. And most fundamentally, Keller's suit against Truist makes clear that even all of this factfinding is not enough, because Experian would still need to determine the legal implications of a creditor mistakenly refusing payment after erroneously closing an account.[2]

**2.** Rather than explain how his dispute over whether he was *delinquent* is objectively and readily verifiable, Keller spends the bulk of his brief on a late-breaking red herring: that the continued reporting of

_____

[2] Keller further suggests that he is being "reported as *willfully* refusing to pay a just debt," and Experian could have easily answered that question by looking at bank documents. JA 33 (emphasis added). Of course, Experian's reporting him as "delinquent" on the debt has nothing to say about his mindset when not paying it. Moreover, whether he was "willful" in his nonpayment is the exact sort of question this Court has said even furnishers need not resolve: "objective and readily verifiable" inaccuracies do not "require a furnisher to evaluate the subjective nature of the parties' actions." *Roberts*, 131 F.4th at 251.

Truist's original tradeline for the debt created a "facial incompatibility" when it began reporting the renewed debt as a separate tradeline that it reported as past due. Regardless of what the "right" answer might be to the past-due question, his theory goes, he had identified for Experian an "objectively and readily verifiable contradiction apparent from the face of Experian's own file" through what he says are multiple inconsistent tradelines. Keller Opening Br. 9, 11-12.

Keller's argument is flawed three times over. It is not properly before this Court, it is not consistent with the pleadings, and it is meritless on its own terms. Each is taken in turn.

**a.** Keller has not preserved the issue for this Court's review. His multiple-tradelines theory is absent from the allegations in the operative complaint, which centered on "*The* Inaccurate Tradeline"—*i.e.*, a single inaccurate tradeline—and not the inconsistent-tradelines theory his brief now features. JA 14 (emphasis added). Nor did this theory appear in his opposition to Experian's motion to dismiss, which argued only that Experian's reporting was inaccurate "because he tendered payments to Truist, which payments were rejected despite his efforts to pay the loan." JA 70-71; *see also* JA 75-78 (contending that the question for Experian to

resolve was whether he had tendered the payments). Insofar as the dismissal ruling he challenges is concerned, then, he forfeited the issue by not raising it in his dismissal briefing. *See, e.g.*, *DePaola v. Clarke*, 884 F.3d 481, 488 n.4 (4th Cir. 2018).

To be sure, Keller asserted a form of this theory in a motion for leave to amend he filed after the district court had dismissed his individual claims with prejudice. But the court denied that motion as moot and expressly qualified that it did "not reach the merits." JA 428-433 & n.4. Nowhere in his opening brief does Keller cite the governing standards for amendments, much less challenge that ruling. Instead, he proceeds as if the district court had granted his motion, stressing the purportedly inconsistent tradelines so much one could mistake that for the theory he pressed when challenging the decision he attacks on appeal. That is forfeiture. And even if it were not, Keller never explains how this Court is in a position to resolve an issue "committed to the discretion of the district court" in the first instance. *Davis v. Soc. Sec. Admin.*, 741 F. App'x 952, 953 (4th Cir. 2018). From any viewpoint, the amended allegations are not properly before this Court.

**b.** Keller's failure to come forward with this argument sooner is unsurprising, too, since the report attached to his amended complaint makes clear that any facial inconsistency was corrected during reinvestigation—as Keller himself ultimately concedes.

Recall that he puts three tradelines at issue. One (account starting with 120187[]) is not even facially inconsistent because it appears as an entirely different loan, with a different account number (and also a different original balance). *See* JA 222-225. Moreover, Experian never had notice that this account was in dispute. Keller's dispute letter challenged only "inaccurate information regarding a Truist Bank Auto Loan with account number starting with 120338[]." JA 33. At no point did he suggest to Experian that the Truist account starting with 120187 was inaccurate. Because the reinvestigation obligation triggers only in reference to "disputed information," 15 U.S.C. § 1681i(a)(1)(A), "[n]o reinvestigation is required until the credit reporting agency is notified of an error." *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 608 (7th Cir. 2005); *see, e.g.*, *Spence v. TRW, Inc.*, 92 F.3d 380, 383 & n.1 (6th Cir. 1996); *Casella v. Equifax Info. Servs.*, 56 F.3d 469, 474 (2d Cir. 1995); *Herisko v. Bank of Am.*, 367 F. App'x 793, 794 (9th Cir. 2010). So

not only did Experian not have an obligation to reinvestigate that account, it had no reason to do so as a matter of common sense.

That leaves the other two accounts, which did report to the same number and were identified by Keller in his dispute letter. *See* JA 33. Of those two, the one reporting him as delinquent remained in his file because Truist certified in response to Experian's ACDV inquiry that it was accurate based on its position on the loan. JA 17. The other *was deleted during the reinvestigation*. The results of Experian's reinvestigation show that only two Truist loans are reported following the dispute—the first account noted above and the negative tradeline. *See* JA 317-322.

As Keller is forced to admit in his brief, "Experian's reinvestigation resulted in *two* of the tradelines remaining in the report." Keller Opening Br. 15 (emphasis added). And those two surviving tradelines had different account numbers and original balances. Because Keller's dispute letter never asserted that these tradelines were the same debt, Experian had no way of knowing that the outlier tradeline was part of the same loan. In other words, Experian *addressed the alleged facial*

*inconsistency* and had no notice of any purported latent inconsistency that might warrant further investigation.

**c.** These new allegations are also a distraction because they do not change the *dispute* that Keller raised: Keller said that he was not delinquent on a debt, while Truist said he was. Keller does not explain, and Experian does not see how, the existence of these purportedly inconsistent tradelines justifies "the report entries [being] fixed to state that the bank messed up and that the loan is in good standing." JA 33. On appeal, the closest Keller comes is suggesting the inconsistency should have given Experian reason to think that Truist was "unreliable," *see* Keller Opening Br. 27-28, 35, but that only underscores that his dispute demanded that Experian improperly mediate a collateral attack. Nor, for that matter, does Keller suggest that the inconsistency injured him in some way other than the fact that the delinquency was reported. *See id.* at 35-36 (discussing the denial of credit because the report made him "look chronically delinquent" due to the "false narrative of a 6-month default").

At bottom, the purported facial inconsistency remains a non-cognizable inaccuracy. To resolve it, Experian would still need to get to

the bottom of the status of Keller's debt.  And any claim that the FCRA required it to do so fails at the threshold inquiry this Court identified in *Roberts*.

**3.** As a fallback, Keller suggests that, even if his dispute is not "objectively and readily verifiable," he has still stated a claim against Experian because the FCRA requires it to delete disputed information that "cannot be verified." 15 U.S.C. § 1681i(a)(5)(i); *see* Keller Opening Br. 24-26.  But this repackaging likewise fails on multiple grounds.

**a.** To start, any duty under § 1681i(a)(5) triggers only "after any reinvestigation under [§ 1681i(a)(1)] of any information disputed by a consumer."  And the FCRA requires a complete reinvestigation only if (among other things) a consumer properly disputes information's "completeness or inaccuracy."  *Id.* § 1681i(a)(1).  So the reinvestigation duty dissipates when a dispute is not "objectively and readily verifiable." *Roberts*, 131 F.4th at 252.  Without that sort of dispute, a credit-reporting agency never reaches the later, potential step of deletion.  *See* 15 U.S.C. § 1681i(a)(5).

Indeed, Keller's position cannot be reconciled with *Roberts* or the host of other circuits it joined.   Again, *Roberts* instructs that an

inaccuracy must be "objectively and readily verifiable" as a threshold requirement for an investigation claim. 131 F.4th at 252. And it reached that result, more specifically, in addressing a furnisher's investigation requirements during an indirect dispute under § 1681s-2(b)(1). *See id.* at 248. Like § 1681i(a)(1), that provision requires deletion of information that "cannot be verified." 15 U.S.C. § 1681s-2(b)(1)(E). So if Keller were right, *Roberts*'s instruction would be wrong. Rather than being a reason for a plaintiff failing to state a claim, the lack of an objectively and readily verifiable dispute would count in a plaintiff's favor.

**b.** Relatedly, Keller's view would disrupt the entire credit-reporting system. The implication of his position is that any collateral attack on a debt by a consumer would require deletion, at least until a court resolved the suit (if one ever did).

For understandable reasons, every single circuit to address the issue has rejected it. As the Ninth Circuit put it, consumers do not have a right to "be deemed innocent until proven guilty by a proper reinvestigation under the FCRA." *Carvalho*, 629 F.3d at 891. Because consumers do not dispute favorable information, doing so would put an extreme thumb on the scale in favor of creditworthiness, irreparably

distorting the credit system. *See id.* at 892 ("'The very economic purpose for credit reporting companies would be significantly vitiated if they shaded every credit history in their files in the best possible light for the consumer.'" (quoting *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991)) (alteration omitted)). And so even beyond § 1681i(a)(5)'s text, as the Fifth Circuit ruled, requiring "the deletion of debt information because of inaccuracies which 'cannot be verified'" by credit-reporting agencies "would frustrate the FCRA's goal of ensuring 'fair and accurate credit reporting.'" *Reyes*, 140 F.4th at 289 (quoting § 1681(b)). Congress already contemplated a more sensible approach: the FCRA allows consumers to file brief statements describing the dispute while they and their creditors sort it out. 15 U.S.C. § 1681i(b).

*     *     *

At bottom, Experian could keep the debt on Keller's report even though it did not need to resolve Keller's and Truist's dispute over it. Because Keller failed to identify a cognizable error in his report, he cannot state an individual reinvestigation claim under 15 U.S.C. § 1681i, however he packages it. The district court's dismissal of those claims should therefore be affirmed.

## II. The district court correctly dismissed Keller's putative class reinvestigation claim.

The district court also was right to dismiss on standing grounds Keller's putative class reinvestigation claim challenging Experian's suspicious-mail policy. Standing requires that a plaintiff's alleged injury in fact be "fairly traceable to the challenged conduct of the defendant." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). This demands a "causal connection between the injury and the conduct complained of." *Heirholzer v. Guzman*, 125 F.4th 104, 116 (4th Cir. 2025). And Keller's complaint—not just the operative one, but the proposed complaint too— failed to trace his alleged injury to the mail policy his putative class claim challenges. Even if Keller had established traceability, however, his claim still fails. Since he has failed to allege an inaccuracy, he cannot pursue any reinvestigation claim against Experian.

### A. Keller forfeited a challenge to the district court's dismissal of that claim for lack of standing.

Keller's argument for standing is only that the district court's ruling "was derivative of the first Order's error" in dismissing his individual claims. Keller Opening Br. 37. This argument misses another, independent reason the district court gave for concluding that Keller lacked standing: Keller's alleged injuries were not traceable to

42

Experian's mail policy. The policy, after all, did not prevent Experian from reinvestigating Keller's claim; it only caused Experian to follow up with Keller first to confirm he actually submitted the dispute. The district court thus concluded that "the *delay* in Experian's *reinvestigation* cannot have caused Keller's alleged injury" because "an immediate reinvestigation (absent the alleged delay) only would have more quickly led Truist to affirm—incorrectly—that Keller's file accurately reflected Truist's own records." JA 426. In other words, "none of the allegations within Keller's first amended complaint connect[ed] Keller's inability to obtain a mortgage loan to Experian's delay." JA 426-427. That precluded a finding that the alleged violation—Experian's mail policy, as distinct from any particular reinvestigation—was traceable to his alleged injury—the denial of a mortgage loan. *Id.*

Keller's brief does not mention, much less dispute, this independent ground for the district court's ruling. His failure to address that conclusion is dispositive. As this Court has reiterated time and time again, "to obtain reversal of a district court judgment based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against him is incorrect." *In re Under Seal*, 749

F.3d 276, 293 (4th Cir. 2014) (alterations and internal quotation marks omitted). Keller's challenge to the district court's inaccuracy ruling does not preserve a challenge to this traceability ruling, for "an objection on one ground does not preserve objections on different grounds." *United States v. Massenburg*, 564 F.3d 337, 342 n.2 (4th Cir. 2009).[3]

### B. The district court's conclusion that Keller failed to allege a traceable injury was correct.

In any event, the district court's traceability ruling was correct. In his complaint, Keller focused on the following alleged injuries—that Experian had "disseminated … inaccurate information" about his car loan and that "[a]s a result," he had "been unable to obtain a mortgage loan on a property he was interested in." JA 21-22; *accord* JA at 261-263 (proposed amended complaint with identical allegations). Even now on appeal, this is his only theory of injury. *See* Keller Opening Br. 35-36.

His allegations fail to connect those injuries to the conduct at the core of the putative class claim: That Experian asked him to confirm that he had authorized the dispute, when it should have instead started to

---

[3] Nor, for that matter, does Keller challenge the district court's ruling that he never alleged any pecuniary or other harm related to the mail policy. JA 425 n.3. This argument too is forfeited and, in any event, the district court's decision is correct as a matter of law.

look into it right away.  *See* JA 16-21.  As the district court quite properly put it, Keller's allegations "fail to plausibly set out how Experian's immediate forwarding of Keller's first dispute letter might have led Keller to obtain his desired mortgage loan."  JA 427.

To the contrary, Keller's allegations only confirm that his injuries were untethered from the putative mail policy.  As Keller tells it, once he "sent a second letter to Experian confirming that he authorized the dispute," Experian then "relayed" the dispute to Truist.  JA 17.  Truist responded, and the result of that process was the challenged information on his report—that the loan was past due—remained.  *Id.*  At most, all the mail policy allegedly caused was some delay.  But the disputed reporting was the same before, during, and after Experian's reinvestigation.  As the district court recognized, even if there were an inaccuracy, an "immediate reinvestigation (absent the alleged delay) only would have more quickly led Truist to affirm—incorrectly—that Keller's file accurately reflected Truist's own records."  JA 426.  In sum, nothing he alleged, then, makes it plausible that Experian's confirmation is causally connected to his asserted injuries.

That Keller pleads his suspicious-mail claim as a putative class action does not alter this result. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[T]hat a suit may be a class action ... adds nothing to the question of standing." (internal quotation marks omitted)). For putative class claims, standing depends on the allegations of the named plaintiffs. *Baehr v. Craig Northrop Team*, 953 F.3d 244, 252 (4th Cir. 2020). Where, as here, the named plaintiff lacks standing, a court is "obliged to dismiss" a putative class claim "upon making that determination." *Id.* at 258. This court should therefore affirm the district court's judgment.

## C. Even if Keller had standing, the inaccuracy ruling dooms his class claim.

Should this Court disagree with the district court's standing ruling, it should still direct the district court to dismiss Keller's putative class claim—this time, with prejudice. As explained, a reinvestigation claim requires an inaccuracy, that is, an "objectively and readily verifiable" error brought to the credit-reporting agency's attention. *Roberts*, 131 F.4th at 251; *see supra* at 20-27. And as set forth above, Keller has failed to allege one. *See supra* at 27-32. His concern with Experian's reporting—that because Truist told him the account was closed and did

not take his tendered payments—is not one that a credit-reporting agency can objectively and readily verify.

That Keller's concern is with the timeline of Experian's reinvestigation makes no difference. The clock in 15 U.S.C. § 1681i(a)(1)(A) does not even start ticking until an agency receives notice that "the completeness or accuracy of an[] item of information is disputed by the consumer." 15 U.S.C. § 1681i(a)(1)(A). Hence Keller lacks an individual claim to challenge the alleged mail policy under that provision.[4]

## CONCLUSION

For these reasons, the Court should affirm the district court's dismissal of Keller's complaint.

_____

[4] If this Court disagrees with these reasons for affirming, Experian respectfully requests that it remand to the district court for consideration in the first instance of its other arguments for dismissing the claims, including (among others) its alternative argument that the procedures it employed for its reinvestigation were reasonable here.

Dated: March 6, 2026

Respectfully submitted,

*/s/ Jeffrey R. Johnson*
Jeffrey R. Johnson
John C. Brinkerhoff, Jr.
Isabelle H. Sandoval
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-7684
Facsimile: (202) 626-1700
jeffreyjohnson@jonesday.com

*Counsel for Defendant-Appellee/Cross-Appellant Experian Information Solutions, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments), this brief contains 9,399 words. This brief complies with the typeface and type-style requirements because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point serif Century Schoolbook font.

*/s/ Jeffrey R. Johnson*
Jeffrey R. Johnson